JOHN KUHLER et al., next of kin of MARGARET FLECK, appellants, v. JACOB HOOVER, late trustee of said MARGARET, appellee.

Testator bequeathed one-eighth of his estate to his daughter M. being of full age, and appointed trustees for her to take charge of her person and estate, and to provide for her comfortable support and subsistence. J. having been appointed by the Court of Common Pleas, in 1828, trustee in the place of the resigning trustees received the property. In 1843, the same court, on the petition of the next of kin of M., averring her to be of weak intellect, awarded a citation to the trustee to settle his accounts. He appeared and filed his accounts, which on petition of the relatives of M. were referred to an auditor, both parties excepting to his report. The court dismissed the whole proceedings for want of interest in the parties to the citation. On appeal this court reversed the decree, and directed the proceedings to be reinstated and proceeded in.

The Court of Common Pleas has jurisdiction by the act of 14th June, 1836, to compel a testamentary trustee other than an executor *ratione officii*, to file his accounts, but it must be on the petition of some one interested. The next of kin of a *cestui que trust*, who is living at the time, has not such an interest as will entitle him to file a petition for that purpose. Per Bell, J.

But if the trustee appear to such petition and file his accounts, which are referred to auditors, and a report is made, this objection cannot be taken.

Where the court, on the application for a discharge by a trustee of one of weak intellect and of full age, directed notice to be given to the next of kin of the *cestui que trust*, and a new trustee was appointed, who on a citation at the instance of the next of kin filed his accounts, and the whole proceedings were then dismissed by the court for want of interest in the petitioners, such next of kin may appeal to this court, and they will be considered as next friends, appointed by the court to superintend the proceedings, and they may be amended, if necessary, so as to appear to be issued by the *cestui que trust* in person.

APPEAL from the Common Pleas of Montgomery county.

*Dec.* 28. Adam Fleck by his will devised his real estate at a valuation to three persons, and the money arising therefrom, with the whole amount of his personal estate, and the residue of all his estate to his eight children in equal shares. The will enumerated them, and gave one equal eighth share to Margaret Fleck. After the appointment of executors, the will continued: "I also appoint my trusty friends, F. Conrad and Philip Hoover, trustees and guardians for my son John and Margaret, to take charge of their persons and estates, and provide for them, and their comfortable support and subsistence." It was admitted that the children were all of full age at the date of the will. In 1828, Philip Hoover, the surviving trustee, was discharged on his own petition after settlement of his accounts and surrendering the estate. At this time notice was by order of the court served on all the next of kin of Margaret, to show cause why the accounts should not be passed, and under the petition Jacob Hoover was appointed trustee and guardian of Margaret.

In 1843, appellants, as next of kin of Margaret, filed their petition, setting forth these matters, and that Margaret was a person of weak intellect; that Jacob Hoover had received the estate, a small portion only of the interest of which was required for her support; that they were interested in the fund, and were desirous of having "an *exposé*," and knowing the situation of the accounts, and praying a citation to settle, &c. A citation having issued, Jacob appeared, and filed his accounts, which were, on petition of the legatees of Adam Fleck, referred to an auditor, who heard evidence and reported. To this report exceptions were filed in 1844 by the accountant and petitioners.

The court afterwards, on the petition of the *relatives* of Margaret Fleck, appointed a new trustee in the place of Jacob Hoover, deceased.

In 1845, the court being of opinion that the parties praying for a citation had no such interest in the estate of Margaret, as entitled them to bring the trustee to an account, set aside all proceedings.

On this appeal, the errors assigned were, in setting aside the proceedings, and in deciding the petitioners had no such interest as entitled them to bring the trustee to an account.

*G. R. Fox* and *Fox*, for appellants.—This proceeding is not under the lunatic act, but under the general chancery powers conferred on the courts in relation to trusts, by the act of 1836. [GIBSON, C. J.—If a lunatic, her representative or personal guardian alone can sue, but if there is none, no one but herself can do so.] It appears there is a class of persons having weak intellects, but not found to be lunatics for whom the courts will appoint persons to superintend their suits and estates, Story Eq. Pl. § 66. And it was on this principle that the court appointed the next of kin, who pretend to no interest, strictly speaking, legal or equitable, but act as next friends under the direction of the court having complete jurisdiction of the subject matter. It is not however necessary to rely on this alone, for the appellee has submitted to the order, which the court had an undoubted right to make of its own motion, and has accounted; and having taken his chance of thus passing his accounts, he cannot, on finding they are not allowed, get rid of the matter on this plea.

*Mulvany,* contrà.—The trustee has a personal discretion in the expenditure of this estate, and is accountable only to those interested, not to the parties here, for they are strangers, the court having no right to appoint them to this office. The court itself has no jurisdiction until after inquest. [GIBSON, C. J.—There is no such thing as a personal guardian of one of full age.] Then what right have these parties? It is presumed every one is sane, until the contrary is shown, and there is no legal evidence to the contrary. To entitle the party to call the trustee to an account, he must be qualified under the act relating to lunatics.

The appellee being a testamentary trustee, the Orphans' Court, by the act of 1832, has exclusive jurisdiction.

The appointment of auditors was wrong, for they are not required until a final account. [ROGERS, J.—If the court could correct an error in the accounts, may not an auditor be appointed to inquire into the facts? BELL, J. The act was intended to make the court a chancellor.]

*Jan.* 6. BELL, J.—The object of the legislature, in the enactment of the several acts of Assembly found on our statute book, relating to the subject of trusts, was to invest the courts of the Commonwealth with the powers, elsewhere exercised by Courts of Chancery, generally to

supervise the execution of trusts, to prevent their failure, to punish their abuse, and to compel exhibits, from time to time, of their state and condition, where accounts are necessary and proper for that purpose. Being highly remedial in their character, they should be liberally expounded and extended in cure of the defect which was so glaring in our original legal system, as to become the subject of universal complaint. Before the passage of these acts, it was the policy of our judicial tribunals to encourage trustees to the discharge of their functions, and now it is their duty to compel this, wherever the necessary jurisdiction has been conferred. In the exercise of a jurisdiction so beneficial, and, indeed, so essentially necessary, in. a country where the relations of property are becoming every year more complicated, there is no cause why we should be astute to discover reasons for stopping short in the application of the remedies provided by these laws, to cases obviously within their purview. The inclination of the courts should rather be to support the partial or complete execution of trusts, however effected, wherever this can with propriety be done.

By the nineteenth section of the act of the 14th of June, 1836, it is made lawful for the proper Court of Common Pleas, or any judge thereof, upon application by bill or petition, to require any trustee created by deed, will, or otherwise, to exhibit an account of his management of the trust estate or funds, &c. . The trust created by the last will of Adam Flick is, indisputably, within the provisions of this section, and therefore the court from whose order this appeal is taken, had jurisdiction of the case, and power to compel the trustee to a settlement of his accounts. It is true, the section seems to require the bill or petition for a citation, by which proceedings against the trustee are initiated, to be by a co-trustee or some person interested in the trust estate or funds; and the court below, looking only to this requirement, dismissed the whole proceeding for an account in this case, after having entertained it up to the confirmation of the report of the auditors and exceptions thereto; on the ground, that the next of kin of Margaret Flick, at whose instance the citation to the trustee was issued, have no interest in the trust fund. This is undoubtedly so, and might have furnished a sufficient reason, under the statute, for refusing to listen to their petition in the beginning, or the trustee, on the return of the process, might, under ordinary circumstances, have suggested the want of interest in the petitioners and prayed a dismissal of their bill. But instead of pursuing this course, he acquiesced in the call made upon him by the relatives of the *cestui que trust*, filed his accounts, appeared and litigated the

question of their correctness before the auditors appointed by the court, and, so far as appears, never took exception to the regularity of the process issued against him, or to the subsequent steps consequent upon it. It was not until after his death, when the court had complete possession of the case, by, as it would seem, the consent of all parties, that such exception was taken, it is to be presumed by his legal representatives, though even this does not distinctly appear by the record. Now, admitting the next of kin as such to be destitute of the right to call the trustee to account under the statute, and that therefore, as is contended for the appellees, the proceeding in its inception was irregular, yet it was not void, for the court had jurisdiction of the subject-matter, and might, as it seems to me, properly entertain it in the absence of objection. At all events, in this as in other instances, the maxim is *consensus tollet errorem*, and this maxim is especially applicable in a case like the present, where the proceeding is wholly within the power of the court to prevent injustice or oppression, and to prohibit improper interference. The great object here is, a settlement of the account of the trust, and this is to be encouraged. Yet the court certainly would not permit a mere stranger wantonly to interfere, even for this purpose, nor perhaps as already intimated, would it suffer even those allied to the *cestui que trust* by blood or marriage, and so having an interest in the beneficiary though not in the fund, to call for an account if the objection were made on the threshold, unless under the peculiar feature of this case hereafter to be noticed. But under the statutes I see no objection to a voluntary statement of his accounts by a trustee, and this would at once invest the court with the power of supervision. Why should not the acquiescence of this trustee in the process of the court, by a settlement of his account without objection, be deemed a voluntary act for the purpose of supporting a proceeding which the interest of the trust demanded, and which can work no injury to the trustee? I am at a loss to imagine any valid reason why it should not be so accepted. It must be presumed he was possessed of a knowledge of his rights, and therefore his utter neglect for so long a period to call in question the act of the petitioners in praying the process of the court against him may, without any violation of propriety, be accepted as tantamount to a voluntary submission to the jurisdiction invoked. Having once submitted, at the instance of parties, who may be regarded as not merely intruders, we think his representatives are not at liberty to withdraw themselves from the power of the proper tribunal, upon discovering that the estate of their decedent stands in danger of being charged with

a larger sum than he was willing to confess. On this ground alone, we are of opinion, the court below was wrong in setting aside the proceedings had under its authority.

It must be confessed if the case stood on this foot alone, some difficulty might be felt in supporting the appeal to this court, by the next of kin. But there is another point of view in which they may be regarded as proper parties to the proceeding had below, and consequently to this appeal. It is to be gathered from the record, and indeed it is conceded all round, that Margaret Flick, the *cestui que trust*, is of such weak intellect as to be incapable of superintending and managing her affairs. From this springs the difficulties that have been experienced in the case, and this obviously furnished the reason why the Court of Common Pleas, in the year 1828, directed notice of the application of the then trustee, Philip Hoover, to be discharged from the burden of the trust, to be given, not to the *cestui que trust*, but to her next of kin, and it was under this notice which made the next of kin parties to the proceeding, that the late trustee, Jacob Hoover, was appointed. Now it is a rule in Chancery, that where a person is incapable of acting for himself, although not strictly an idiot or lunatic, a suit or proceeding may be instituted in his name, and the court will authorize some suitable person to carry it on as next friend. Story's Eq. Pl. § 66. There is certainly room for the application of this rule to the case in hand. The propriety of the call for an account cannot be questioned. Long before it was made, the next of kin had been called into court, under the direction of the court itself in connection with the trust, and the appointment of this very trustee. Afterwards, the court entertained their application for a citation against him. Looking to these facts, and having respect to the mental condition of the *cestui que trust*, it is, certainly, not straining the point too far to regard the next of kin as her next friends, recognised if not appointed by the court as such, and therefore authorized to take the necessary steps for the protection of her interests. There is less difficulty in this from the circumstance that their present application was entertained for nearly two years, without question by any one. That the bill or petition does not run, formally, in the name of the *cestui que trust*, can make no difference. The substance, which is the call for an account, is every thing, the form nothing. It may be reformed if deemed necessary for conformity.

To prevent any possible misconception, it may be added, that were the *cestui que trust* in a condition to refuse her assent to these proceedings, and in any way manifested dissent; or, perhaps, *if she*

were competent and silent in respect of them, the case would present a different aspect. But as matters stand, her assent must be presumed, in as much as the steps that have been pursued are in promotion of her interests, and, in every event, it is the duty of the proper court to take care that these interests are not compromised or impaired.

Decree of the court below, setting aside the proceedings reversed, and it is ordered that the said proceedings be reinstated, to be proceeded in according to law.